CYRUS LATHAM ET AL., PLAINTIFFS IN ERROR, V. EMANUEL G. SCHAAL, DEFENDANT IN ERROR.

1. **Trial:** GRANTING NEW TRIAL: PRESUMPTION. The verdict of a jury was set aside and a new trial granted upon the motion of the losing party, which motion was based upon a number of assignments, among which were, misconduct of the jurors, and that the verdict was not sustained by sufficient evidence. In the absence of a bill of exceptions showing what the evidence was, it is presumed that the decision of the court in granting the new trial was correct, the journal entry not showing the reasons for which the verdict was set aside.

2. **Wills.** "Influence, to vitiate a will, must be such as to amount to force and coercion, destroying the free agency of a testator, and there must be proof that the will was obtained by this coercion; and it must be shown that the circumstances of its execution are inconsistent with any hypothesis but undue influence, which cannot be presumed, but must be proved, and in connection with the will and not with other things." *Bradford v. Vinton* (Mich.), 26 N. W. Rep., 401.

3. ———. In the absence of a copy of the will in the bill of exceptions, the supreme court cannot say whether the property was improvidently distributed, and owing to such absence it cannot be presumed that the district court erred in excluding the evidence as to the financial condition of some who would naturally be the recipients of the bounty of the testator.

ERROR to the district court for Sarpy county. Tried below before WAKELEY, J.

*Grove, Ferguson & Magney,* for plaintiffs in error, cited:

1 Jarman on Wills, 37, 39, 41, 44. Redfield on Wills, Sec. 43, 529. *Pool's Heirs v. Pool's Executor*, 33 Ala., 146. *Tyler v. Gardiner*, 35 N. Y., 593.

C. A. Baldwin, M. Langdon, and B. E. B. Kennedy, for defendant in error, cited: *In re Will of Carroll*, 7 N. W. Rep., 434. 1 Jarman on Wills, 5 Am. Ed., 131, note E. *Bradford v. Vinton*, 26 N. W. R., 401. *Samson v. Samson*, 25 N. W. R., 233-237. *Storer v. Zimmerman*, 8 N. W. R., 827.

REESE, CH. J.

This was a proceeding to contest a will made by Jonas Mitchell in his life-time, and which was, after his death, duly proven and admitted to probate in the county court of Sarpy county, and taken by appeal to the district court by the plaintiffs in error, who are the contestants.

The basis of the contest is, 1st, that the testator was of unsound mind at the time of making the will; and 2d, that the will was made under undue influence, and by fraud, perpetrated upon the testator at and prior to the time of making the will.

The case was tried to the district court and a jury at the May term, 1886, when the finding was in favor of contestants. After the verdict was returned a motion for a new trial was made, assigning therefor a number of reasons, among which was that of the misconduct on the part of certain jurors who heard the case, during the trial. The motion as to the misconduct of the jurors was supported by affidavits, and to which counter-affidavits were filed.

The cause was subsequently called for trial, when a jury was empaneled, and upon the evidence for plaintiffs in error being closed, the court, on the motion of defendant in error, withdrew from the jury the questions submitted for their consideration, for the reason that no evidence had been introduced sustaining the contest; whereupon the

court found that the testator, at the time of making the will, was competent so to do, and there being no proof of undue influence, it was ordered that the will, and the probate thereof by the county court, should stand, and the conditions thereof carried out by the executors. To this ruling of the court plaintiffs in error excepted, and filed their motion for a new trial, which was overruled, to which they duly excepted, and now bring the case to this court by proceedings in error.

The assignments contained in the motion for a new trial are—"1st. The judgment of the court was contrary to, and unsustained by the evidence.

"2d. The court erred in the rejection of the testimony offered by contestants.

"3d. The judgment is contrary to law.

"4th. The court erred in withdrawing said cause from the jury.

"5th. The court erred in setting aside the verdict and granting a new trial, on the former trial of said cause.

"6th. The judgment should have been in favor of the contestants, and against the contestees.

"7th. Errors of law occurring upon the trial and duly excepted to at the time by contestants."

The first question in the order of the proceedings is that contained in the fifth assignment in the motion for a new trial, to-wit: That the court erred in setting aside the former verdict. The journal entry showing the ruling upon that motion does not show for what reason the verdict was set aside. The motion for a new trial contains a number of assignments; among which is, that the verdict is not sustained by sufficient evidence. We cannot say from the record whether the verdict was sustained by sufficient evidence or not, as there is no bill of exceptions containing the evidence introduced on that trial. All presumptions being in favor of the correctness of the proceedings of the district court, we must presume, in the ab-

sence of a showing to the contrary, that the decision was correct. But were we deciding the case alone upon the theory that the district court set aside the verdict on account of the misconduct of the jurors, we could not reverse the decision, as it was upon a conflict of evidence, and could not, for that reason, be molested. We are unable to see, therefore, that there was error in the decision of the district court upon that motion for a new trial.

We next come to an examination of the alleged errors occurring upon the second trial.

Following the line of argument presented by the brief of plaintiffs in error, the next question presented is, that "undue influence was exercised by the beneficiaries in the procurement of the provisions in the will." We have carefully read the testimony of the witnesses presented upon the trial, and are unable to find any proof of the exercise of any influence, whether undue or otherwise, upon the testator, as to the execution of the will. It must be conceded that the conduct of those who are said to be interested in sustaining the will was, in some respects, quite unnatural, and fails to show that degree of affection which is presumed to exist upon the part of the child toward a parent. But this testimony should, perhaps, be taken with some degrees of allowance. The testator was not far from seventy years of age; had been afflicted for a long time prior to his death. At times he suffered considerable of pain, and about one year before his death his wife died, which tended to make him more melancholy than otherwise. He resided with two sons and a daughter, toward whom he, at times, expressed rather unfriendly feeling. They all resided upon his farm. It is said that, at times, those with whom he resided did not appear anxious that his other children should see him or know much of his condition. But yet the facts stated by the witnesses might be otherwise construed. Conceding all that is claimed by plaintiffs in error in this regard, we yet

Latham v. Schaal.

fail to find anything in the record which in any degree
tends to show that the will in question was produced by
any act or under any influence exerted by defendants in
error. On the day of the execution of the will, one of
defendants in error went to Papillion, and informed Judge
Hancock, of that place, that his father, the testator, de-
sired him to come to their home, at the farm; that he
thought he wanted a will made, or some such statement.
Judge Hancock went to the house of the testator, where
he found him sitting in a chair, Mr. and Mrs. Schaal
being there. No other members of the family were pres-
ent except Mrs. Whitney, one of defendants in error, who
appeared to be at work in an adjoining room, and occa-
sionally entered the room in which the will was being
written. James Mitchell, one of the defendants in error,
and against whom much of the testimony is directed,
was not present. Owen Mitchell, with whom Judge Han-
cock went, passed through the room, but did not stop, and
was not present during the writing of the will. There is
nothing in this record to show that Mr. and Mrs. Schaal
were interested parties. The will was dictated by the tes-
tator, without any suggestions having been made to him
at that time as to what it should contain. It is very clear,
from the testimony of Judge Hancock and Mr. and Mrs.
Schaal, that no influence of any kind was exerted at that
particular time. And, as we have said, there is no proof
that the matter of making the will was ever mentioned
between the testator and the beneficiaries, either directly
or indirectly. It is claimed by plaintiffs in error that the
beneficiaries lived with the testator for years, and exer-
cised such a general and overruling influence over him in
his affairs as is inconsistent with the idea of a disposing
mind. We grant that these facts are entirely competent,
when taken in connection with other evidence, and should
be considered in ascertaining whether or not the execution
of the will was the result of the exercise of undue influ-

ence. But this could only be considered in connection with evidence tending to show that undue influence was exerted upon the testator. It was conceded in open court, upon the trial, that at the time of the execution of the will the testator was of sound mind. The statement of the attorney representing the contestants being, " We do not question his mental capacity to make the will."

In *In re Disbrow's Estate* (Mich.), 24 N. W. Rep., 624, the judge before whom, with a jury, the case was tried, instructed the jury, among other things, that if they found as a fact the existence of the confidential relation claimed by the contestants, and existing between the testator and devisee, and that the trust and confidence claimed was in fact reposed, their dealings will, therefore, be closely scrutinized for the detection of any advantage being taken ; yet if the influence they possessed was not in fact exerted, and did not in fact procure the will, then the will was the will of the testator, and should stand, notwithstanding the existence of the relations referred to. This doctrine was affirmed by the supreme court of Michigan, and, we think, correctly.

There is one other consideration which sometimes enters into investigations of this kind, but of which we are deprived. It is no doubt the law that, if by a will the testator seems to have bestowed his property more bountifully upon those who are alleged to have exerted the undue influence, and to the exclusion of others who by the common ties of kinship should be provided for, that fact may be considered in arriving at the condition of the mind of the testator at the time of the execution of the will. But no copy of the will is found in the record in this case, and we are left wholly in the dark as to what the bequests were, and to whom given.

Some testimony was offered by plaintiffs in error, and excluded, which was for the purpose of showing that the beneficiaries of the will directed and controlled the testator generally in the management of his business, and of which

exclusion complaint is made. A large mass of evidence of the kind offered and excluded was received. Plaintiffs in error were permitted to cover a period of ten or more years, seeking to show and showing that in some instances where the testator had agreed upon contracts of trade and exchange, he was practically overruled by his sons, and the trade uncompleted or broken. This seems not to have been of frequent occurrence, and the influence exerted seems to have been in the direction of economy, and, perhaps, for the best interest of the testator at the time. From all the testimony in the case, it is quite clear that no permanent ill-will or unpleasant feelings between the testator and his sons grew out of the transactions referred to.

Mrs. Harrison, a daughter of the testator, was called as a witness. It was shown that she was a widow, and had four children. When asked as to her financial condition, upon objection being made, the proposed evidence was excluded. We are inclined to think the ruling of the district court in excluding this evidence was correct, in any view of the case. It would evidently have been entirely proper, had there been any evidence to show that undue influence had been exerted to procure the execution of the will. But be that as it may, as we have said, there is nothing before us showing whether Mrs. Harrison was a beneficiary or not, and therefore it would be wholly immaterial as to what her financial condition was. This must dispose of the exception to the ruling of the court in excluding the county court record showing the appraised value of the estate of the testator, and in excluding certain copies of deeds to real estate in Greeley county and elsewhere, by which the land described was conveyed by the testator to defendants in error.

The judgment of the district court must therefore be affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.